This is case number 23-1291, American Whitewater Petitioner v. Federal Energy Regulatory Commission. Ms. Nicholson for the petitioner, Ms. Gell for the respondent. Good morning. Good morning, and may it please the Court. My name is Haley Nicholson, and I represent the petitioner, American Whitewater. In this case, every single resource agency and nongovernmental stakeholder urged the removal of the two dams of the Summersworth Hydroelectric Project. And for good reason. There are many significant and permanent benefits to removing the dams, including providing 192 acres of habitat for at-risk species, increasing river connectivity, opening up boating opportunities on this stretch of the Salmon Falls River, and providing nine miles of spawning and rearing habitat for migratory fish. In weighing these benefits and making decisions on how corporations may properly surrender their hydropower licenses, FERC undoubtedly has some level of discretion. But no amount of discretion stretches as far as to allow the agency to project actual evidence of environmental and recreational benefit in favor of pure speculation. Could you please just point to me the evidence and the record that supports that there would be actual recreational benefits? Because from what I've read, it seems the way you framed this was there could be a restoration to a more natural state. And I just am trying to understand what the actual recreational benefits would be, because the FERC seemed to think that these were speculative recreational benefits. And I guess the record reflects that there's no public access to this area, this 0.3-mile stretch, and it's an industrial area. So I'd appreciate your guidance as to where in the record there's evidence of actual recreational benefit. FERC's determination is contradicted by the record evidence. The only record evidence that FERC had before it about recreation opportunities were American Whitewaters Comets, which this court can find in the joint appendix at AR 461 and also at 419. And in both of those comets, American Whitewater asserted that there would be boating opportunities if these dams were removed because there would no longer be any blockages to boating on this stretch of the river. Could you point that? Because I looked at those exact pages, and what I saw was it was phrased as, quote, with the removal of the lower dam. I'm especially interested in the lower dam because I feel like that's not as well supported. This section of the river could be restored to a more natural state. Yes, Your Honor. And it's American Whitewaters' contention throughout its comments that their members would, in fact, recreate on this stretch of the river if the dams were removed. So where's the evidence that they would? The best evidence, Your Honor, is through the comets and also American Whitewaters' declarations in both of them, through Skipper Morris and the declaration of Ryan Waterhouse, which this court can find in the appendix to Petitioner's opening brief. Both of those declarations assert that American Whitewater members would, in fact, recreate on this stretch of the river if the dams were removed. Is that enough? It seems to me that it's a rare thing for FERC to order the removal of a dam. They repeatedly say that's a rare thing. And just a few people saying that we would boat on the river if there were no dam, is that enough to trigger greater scrutiny? It just seems to me that there should be more evidence of recreational benefits than a few people saying we would boat there if we could. Your Honor, the key point here is that there was record evidence before FERC that they did not sufficiently grapple with. And as the Supreme Court held in Motor Vehicle Manufacturers Association v. State Farm, where there's that contrary evidence in the record, FERC has to grapple with it and make a rational connection between the facts and the decision made. So the evidence you're relying on is that JA-419 and JA-461-62. Is that all you're relying on? There's another set of American Whitewater comments in Joint Appendix 247. So that works as well.  So those are the only areas of the record where there's evidence of recreational benefit, and that's what we should look to? Yes, Your Honor. For recreational benefit. Okay. In weighing these benefits and making decisions on how corporations may properly surrender their hydropower licenses, FERC must support its decision with substantial evidence. And while substantial evidence is a deferential standard of review, it still has limits. As the Ninth Circuit held in Woods v. United States, quote, substantial evidence cannot be based upon an inference drawn from facts which are uncertain or speculative and which raise only a conjecture or a possibility, end quote. Here, FERC does not have evidentiary support. It just has speculation. And their primary argument to reject the dam removal alternative highlights just how speculative and unsupported the agency's reasoning actually is. FERC claims that there are four detriments to removing the dams, impacts to the city's water supply, impacts to the city's infrastructure, aesthetic changes, and temporary water quality and noise effects from construction. But not a single one of these is actually supported by a scintilla of evidence. And you don't have to take my word for it. All you have to do is look at FERC's own conclusions and its surrender order, which this Court can find in the joint appendix on page 440, where FERC concluded that out of all the evidence before it, the detriments to the city of Somersworth were, quote, unknown, end quote. In that same paragraph, FERC concluded that changes to aesthetics could be, quote, either beneficial or negative, end quote. Water quality and noise temporary effects, the last man standing, has no site-specific evidentiary support whatsoever. In other words, each of FERC's detriments have no record support, or they're drawn from inferences of admittedly unknown facts. Whatever the standard for substantial evidence, it requires more than drawing inferences from unknown facts. To make matters worse, not a single one of these detriments applies to back dam, which FERC did not independently address in its orders. At a minimum --" Can I ask you about back dam? Because it looks like Aclara's license doesn't include back dam as part of the project. So I'm just wondering why back dam is an issue in this case. It's an issue in this case, Your Honor, because throughout the surrender process proceedings, FERC repeatedly states that it's part of the project boundary and part of the project itself. And so it's still at issue before this Court. So how does the project boundary differ from the project description? This just could be my lack of familiarity with FERC, but I don't understand that. They're pretty synonymous, Your Honor. So the project boundary will include all of the project features, which in this case FERC listed as including back dam. Because the project description in the license doesn't include back dam. So I'm just trying to understand how the project boundary upon surrendering the license, why does that differ from the project boundary for getting the license? It doesn't necessarily differ, Your Honor. So while the license doesn't explicitly mention back dam, Eklera did receive ownership over back dam and stone dam. And that project boundary includes all of Eklera's ownership rights. And so here it is still at issue because FERC continues to claim that it's part of the project description and part of the project features. So I guess I'm just wondering, like, how do we know that they own back dam? Because nobody uses back dam, apparently, and it's not part of the project license. That is correct, Your Honor, that it's not part of the project license and it's not used, but it's still part of the project features and project description that FERC considers. Is there a source for why Eklera is responsible for back dam? There is not a particular source that I could point you to, Your Honor, but I again would assert that this Court should look at the language in FERC's surrender and rehearing orders, in both of which FERC acknowledged that back dam was part of the project. On the other side of the scale from FERC's missing analysis and purely speculative discussion of detriments is overwhelming record evidence of the benefits of dam removal. This Court can find the evidence of those benefits in the joint appendix from comments of the U.S. Fish and Wildlife Service on page 403, from the National Marine Fisheries Service on page 261, from the New Hampshire Department of Environmental Services on page 343, from the New Hampshire Department of Fish and Game on page 423, from the Maine Department of Environmental Protection on page 427, the Maine Department of Inland Fisheries and Wildlife on page 415, and from non-governmental stakeholder Trout Unlimited on page 416. Therefore, FERC's rejection of the dam removal alternative was not supported by substantial evidence. And not only was FERC's rejection not supported by substantial evidence, but it was particularly problematic under the FPA and NEPA. Turning to the FPA, FERC's public interest determination was arbitrary and capricious because it had insufficient information to adequately weigh the factors it was considering. As the Circuit held in Bangor Hydroelectric Co. v. FERC, and as the Second Circuit emphasized in Sena-Cudson Preservation Conference v. FPC, reliance on conclusory assertions does not satisfy the substantial evidence standard and is highly problematic under the FPA. As this Court's discussed, FERC, when acting under the FPA in the public interest, has an affirmative duty to inquire into and consider all relevant facts. FERC did not do so here. FERC's conclusory determinations fare no better under NEPA, namely because FERC failed to take a hard look at the dam removal alternative. As the Circuit held in American Rivers v. FERC, FERC's hard look, quote, will pass a well-considered and fully informed analysis of the relevant issues and opposing viewpoints, end quote. FERC did not do so here as it had only admittedly unknown effects of the dam removal detriments. Therefore, FERC violated NEPA by failing to take a hard look at the dam removal alternative. For the foregoing reasons, American Whitewater respectfully requests that this Court grant its petition to vacate FERC's surrender and rehearing orders and remand for further consideration of the dam removal alternative. Thank you. Thank you. Ms. Gall. May it please the Court. I'd like to start with Judge Pan's question about the evidence of recreational benefit in the record. And, Judge Pan, you're correct that there really is no evidence of concrete recreational benefit, and that's the heart of the issue here. There were concrete uses of the dam as to the City's water supply, fire suppression, infrastructure, and other essential services. And the Commission had to balance those concrete uses against what it viewed were speculative benefits on the other side to recreation in Fish Passage. So, to be frank, we're considering recreation along a .3-mile stretch of industrial river bank. And this isn't, for example, whitewater rafting in the Colorado River in the Grand Canyon. So when balancing those potential benefits against the concrete uses of the dam, the Commission reasonably determined that that dam removal was not in the public interest. So it does seem to me, Ms. Gall, that the Commission focused heavily on the Stone Dam, which did have all of these, I think, clear benefits in terms of water supply and fire suppression, et cetera, and gave a lot less attention to Back Dam, and basically just said if we're not going to do Stone Dam, it doesn't make sense to do Back Dam because it's only .3 miles. And then there were some general things that it said, but I feel like the case is not as strong about Back Dam. It doesn't seem that the Commission considered the option of keeping Stone Dam but removing Back Dam. Your Honor is correct that without removing the Stone Dam, the Commission recognized that the benefits removing Back Dam, especially as to increasing river connectivity for recreation in Fish Passage, were even more limited. But the point is, under longstanding Commission policy, the status quo is to leave the dams in place if the licensee doesn't voluntarily agree to removal. And that's especially true where it's here the dams predate the project by several decades. They were built in the 1920s, and this project wasn't first licensed until 1981. The Commission is typically not in the business of ordering licensees to remove dams that they weren't responsible for creating in the first place. Has the Commission ordered licensees who didn't want to remove the dam? Has the Commission required them to remove the dam as a condition of granting a surrender license? Has that happened before? Right. I'm only aware of that happening once, and that's cited in our brief as the Edwards case. And in that case, there were very specific circumstances. That case was actually a relicensing proceeding, and the project had to comply with several different comprehensive development plans for the river at issue. I think there were 11 different plans in total. And it was determined that there was no way for the project to continue operating and also comply with all those different comprehensive development plans, in part because there were several very important species of fish that could not achieve passage by any alternative means. The only way that these fish could survive is through dam removal. And so the Commission ordered dam removal, but in doing so, it also emphasized that it wasn't ordering removal, quote, on the basis of an opinion that these several species may or could return one day. The need for dam removal had been demonstrated concretely, and the fish were immediately available to take advantage of removal. Here, there's no comprehensive development plan at issue for the stretch of the dam removal. And can you answer my question about the scope of the project? Because the license doesn't include the back dam, but the project does, and I was trying to understand how that happened. Right. You're right, Your Honor, that the license indeed does not include the back dam. The Commission included it in its analysis, given the proximity to other project features, and that's explained at JA382 of the environmental assessment. But the court is correct that it's technically not included in the license itself. So is ACLARA responsible for the back dam of the licensee? It does own the back dam and, you know, operates and maintains it, but it's technically not included within the license that the Commission regulates. I see. So when, I guess, it acquired these assets from GE, it got everything, including the back dam, but the license only covers the stone dam. That's correct. I see. If the Court has no further questions, I'm happy to see the rest of my time. All right. Thank you. Ms. Nicholson, do you want to take a couple minutes? Yes. I have three points, Your Honor. First, FERC's determination that the recreational and fish passage benefits were speculative were not supported by the record. The record, as I stated earlier, contains ample record evidence of the environmental and recreational benefits of removing the dams. But even if this Court just focuses on the recreational values in particular, the record does not support FERC's argument that there would be no recreation here because of the industrial setting. FERC has no record support for that argument, and if anything, the record contradicts FERC's determination. This Court can look to ACLARA's preapplication document, which you can find in the Joint Appendix on pages 154 and 155, where ACLARA describes the project boundary as primarily residential, forested, or commercial, and abutted by a forested natural area. So FERC's determination here was contradicted by the record, and they did not grapple with that other evidence. Secondly, the benefits of removing back dam are also not speculative or minimal, as Counsel for FERC suggests. At a minimum, FERC was required to grapple with the contrary record evidence put forth by the National Oceanic and Atmospheric Administration in the Joint Appendix at 261 and from the New Hampshire Fish and Game Department on page 350, where both agencies talked about the benefits of just removing back dam. FERC did not grapple with this evidence, and thus its determination was arbitrary and capricious. That wasn't recreational, though, was it? No, Your Honor. That was with respect to fish and wildlife values. And finally, with regards to FERC's position on licensees not having to remove dams unless they offered, this policy position is inconsistent with the public interest standard that FERC applies and even its decommissioning policy statement. FERC, throughout the decommissioning policy statement and even in its brief, affirms the idea that FERC has the authority to require dam removal even when the dam owner does not offer to do so, and that's consistent with the public interest standard that they apply, because as Your Honors may imagine, there might be situations where the dam owner does not want to remove the dams, but it's still in the public interest to do so. So FERC's determination on that specific point was arbitrary and capricious and should not be followed by this Court. Thank you.
judges: Henderson; Pan; Edwards